UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCHERER DESIGN GROUP, LLC,<br><br>*Plaintiff*,<br><br>- vs. -<br><br>CHAD SCHWARTZ; AHEAD ENGINEERING LLC; FAR FIELD TELECOM LLC; KYLE McGINLEY, DANIEL HERNANDEZ *and* RYAN WALDRON,<br><br>*Defendants*. | Docket No. 3:18-03540<br>(AET)(DEA) |

---

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

---

**MANDELBAUM SALSBURG P.C.**
Ronald D. Coleman
Brian M. Block
3 Becker Farm Road
Roseland, NJ 07068
973-736-4600
rcoleman@lawfirm.ms
bblock@lawfirm.ms
*Attorneys for Plaintiff*
*Scherer Design Group, LLC*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 2

LEGAL ARGUMENT................................................................................................................ 4

   I.   SDG HAS ALREADY SHOWN THAT IT IS ENTITLED TO A PRELIMINARY
       INJUCTION. ................................................................................................................ 4

CONCLUSION........................................................................................................................... 6

**PRELIMINARY STATEMENT**

On its initial application for a temporary restraining order and preliminary injunction, Plaintiff Scherer Design Group, LLC ("SDG") placed devastating proof of systematic theft and a scheme by which three of the four individual defendants went into competition with SDG while employed by it, aided, abetted and induced to do so by the other defendants. Defendants' main defense to their conduct was based on a patently meritless legal argument to the effect that the main evidence of their malfeasance was "fruit of the poison tree," a doctrine that arises under the Fourth Amendment with respect to criminal cases only. In issuing the temporary restraining order, the Court agreed with plaintiff that the "tree" here – SDG's own computers – was not poisonous; that the "fruit of the poisonous tree" doctrine does not apply to civil litigation; and that even if the evidence were inadmissible under the Federal Rules of Evidence, which defendants did not demonstrate, preliminary relief may issue on the basis of otherwise inadmissible evidence.

Exactly zero new legal or, as it turns out, factual issues have become evidence since the initial briefing here. The "themes" of defendants' discovery, however, signal that they will once again charge up the hill of excluding the Facebook Messenger evidence of their venal actions, notwithstanding the Court's prior ruling on the issue and the law of the case doctrine. It also appears that defendants will pull out the stops and lard the record on this motion with what they believe will amount to a horror show of bad conduct by SDG or its principals that justify their larceny. Just as their opposition to the initial motion burdened the Court with irrelevant soap-opera-like recitations by defendant Chad Schwartz about his entitlement to what he wants and his poor treatment as a prospective partner with SDG, an enhanced rogue's gallery of supposed bad acts by SDG will be trotted out in an attempt to distract the Court from essentially undisputed facts and settled law. The Court should not take the bait, and should enter a preliminary injunction for

1

the same reason – and based on the now superior, corroborated proofs filed herewith – as those that formed the basis of its earlier grant of a temporary restraining order against the defendants.

## STATEMENT OF FACTS

A season after the filing of the Verified Complaint in this matter, defendants still do not deny saying what they said in the Facebook Messenger chat set out in the Verified Complaint. (ECF 1 at 20-30). They have added a few new twists, however. Whereas originally defendant Schwartz speculated, baselessly, that the Facebook Messenger evidence Danny Hernandez left on his SDG computer was hacked by an SDG employee by "posing as Danny, using Danny's invitation and login credentials," now they have an expert who has been paid to say the same thing – without making an attempt whatsoever to explain how SDG got those credentials, and manifesting a serious misunderstanding of the Facebook login protocols. These are briefly addressed, for purposes of clarifying the record, by a second Declaration from Jason Gerstenfeld, SDG's IT director.

For its part, SDG has reviewed as much of the massive discovery produced by Defendants in this matter as it could. *See* Declaration of Brian M. Block, Esq. What SDG was able to determine in the abbreviated amount of time available is set out in detail in the Declaration of Colleen Connolly, one of SDG's two principals. *See* Declaration of Colleen Connolly. She adds numerous relevant facts concerning SDG's operations and the unquestionably proprietary nature of the files, data and business information the defendants lifted from SDG's offices and computer network. She also addresses facts adduced in emails and text messages produced by defendant that illuminate the depths to which they were prepared to go – and did go – to mislead SDG regarding their true intentions and to establish a pair of fully functioning competitive businesses to compete with SDG while still employed by it. This includes emails, testimony and text messages that memorialize a cynical plan between two of the individual defendants and Sam Compton, a

2

representative of Extenet – a key client of SDG in 2017 – to stage a situation where SDG would be seen as "turning down" important Extenet assignments during its holiday break, and then to manufacture a fraudulent dossier of supposed SDG "screw-ups" that Compton used to justify pulling Extenet's work from SDG and send it to the competing companies started by his good friend, Chad Schwartz, and the three SDG employees who stayed on SDG's payroll and its computer network until the last possible moment in early January 2018.

The fact that defendants went into business in competition with SDG while they were employed by the company is not plausibly in question, based on the record already before the Court.  These new submissions only reinforce the Court's earlier conclusion to this effect.  Ms. Connolly does address, in her Declaration, two other issue already raised by defendants and resolved by the Court, but clearly a topic of interest to defendants during discovery anyway: Network security and the proprietary value of the SDG files and data defendants took without authorization. Regarding security, she lays out in detail the unrebutted fact, established in the first round of submissions, that the defendants here were all senior managers at SDG who would have had access to the files in question regardless of how secure SDG's data and servers were to outsiders, who are not the subject of this litigation.

As to the issue of the proprietary nature of the files and materials copied without authorization by defendants, Ms. Connolly's Declaration explains several key points.  One is that even publicly-available information, collated and collected over years, is of great value to businesses.  In the engineering field in particular, she explains, clients seeking to modify design and engineering work already done are always inclined to turn to the professionals who did the work the first time because of their institutional knowledge of the project or site as well as their ready access to site plans, details and other information. Although such information could in theory be collected by a new entrant into the market, firms that have such historical information on file

and integrated into its production and design systems have a competitive advantage over those that do not. SDG is such a firm, and as such has a great competitive advantage over newcomers. To mitigate and even eliminate that advantage, defendants copied and used SDG's valuable collection of information, transferred proprietary technologies and methods that SDG invested considerable sums developing and refining to their own use, and undersold SDG by offering legacy-based competitive advantage that it neither earned nor paid for. Among engineers, Ms. Connolly explains, no one would need a written privacy policy or non-disclosure agreement to understand this, just as no one in the field would dream of simply asking another firm to share its proprietary job and site files, drawings and other information.

At defendants' request, the parties waived a live evidentiary hearing in connection with the conversion of the temporary restraining order into a preliminary injunction.

## LEGAL ARGUMENT

### I. SDG HAS ALREADY SHOWN THAT IT IS ENTITLED TO A PRELIMINARY INJUCTION.

"The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction." *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012). Here the Court issued a temporary restraining order, on notice, after considering extensive briefing and submissions and multiple oral arguments by counsel. The Court subsequently made a ruling based on explicit findings of fact and conclusions of law. On this subsequent application for a preliminary injunction, defendants did not see fit to appear in court and defend their conduct, or be subject to live cross-examination.

The Court's prior rulings supporting its issuance of a temporary restraining order are law of the case, and absent unusual circumstances not present here, there is no basis to disturb them. "In federal court, a judicial determination at one stage of a proceeding becomes the 'law of the case' to be followed in successive stages of the same litigation. *Crown Zellerbach Corp. v.*

4

*Goldsmith*, 609 F. Supp. 187, 189 (S.D.N.Y. 1985). Under the "law of the case" doctrine, courts do not re-open issues already decided "absent compelling circumstances, such as an intervening change of controlling law, the availability of new evidence or the need to correct a clear error or prevent manifest injustice." *Wilder v. Bernstein*, 645 F. Supp. 1292, 1310 (S.D.N.Y.1986), *aff'd*, 848 F.2d 1338 (2d Cir.1988). "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co., Durkee Famous Foods Div*., 327 F.2d 944, 953 (2d Cir.), *cert. denied*, 377 U.S. 934 (1964).

There has been no change in the law. It is still the true, for example, that "a deliberate plan" on the part of a new employer and a plaintiff's former employees "to cause damage to [the original employer] through diversion of its customers . . .," such as is shown on the record before this Court, constitutes employee disloyalty and tortious interference with prospective economic advantage by the new employer. *Platinum Mgmt., Inc. v. Dahms*, 285 N.J. Super. 274, 305 (Law. Div. 1995) (it was "a clear breach of their duty of loyalty" for former employees such as the individual defendants here, "while still employed by [plaintiff] and enjoying its trust and the benefits of their employment, [to go] into secret competition with their employer"). Similarly, it is still the law that all SDG is required to show to demonstrate that the information copied and converted by defendants is that the information in question was – as demonstrated here at length, especially based on SDG's new submissions – "not available to competitors or the public generally and was learned by the employees in confidence." *Sun Dial Corp. v. Rideout*, 16 N.J. 252, 260 (1954). *See also Fortiline, Inc. v. Moody*, No. 12-CV-81271, 2013 WL 12101142, at *3 (S.D. Fla. Jan. 7, 2013) (enjoining use by former employee of compilations made for competitive purposes at the cost of time and expense, access to which was restricted to employees and network administrators and was protected by computer passwords).

No new evidence supports defendants' positions in this litigation. Indeed, in a telephonic conference with the Court, counsel for defendants acknowledged that there were no disputed facts relevant to this motion other than the ones defendants considered germane to "the Facebook question." But, like every other issue decided by the Court, that issue was briefed and argued extensively in the temporary restraining order proceedings. Nothing that has emerged in fact or expert discovery is of any relevance to the Court's determination or indeed the relevant law.

This includes the assertion by defendants' computer forensics expert that, even though there is no evidence suggesting that he had the password or had any way of getting it, SDG's Jason Gerstenfeld logged into defendant Hernandez's Facebook account using Hernandez's password. Again, the dubious suggestion that how SDG got this information was ever a relevant consideration legal issue is closed – both by the Court's earlier rulings and well-established precedent. "[T]he 'fruit of the poisonous tree' is an evidentiary doctrine that does not apply in civil matters." *Envtl. Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 278 (E.D.N.Y. 2014).

Indeed, the assertion by defendants' expert to the effect that SDG must have used stolen credentials to access Hernandez's Facebook account is based on an analysis that is riddled with technological and logical and omissions, as explained in the accompanying Second Declaration of Jason Gerstenfeld and elsewhere in SDG's submissions. For that reason it is truly irrelevant to this motion, and another example of how – after months of discovery – defendants have completely failed to "move the needle" and give the Court any reason to depart from its earlier findings and rulings.

## CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in the Verified Complaint and the supplemental factual submissions of plaintiff filed herewith, this Court should issue a preliminary injunction ordering: (1) expedited discovery; (2) non-solicitation by Defendants of all

SDG clients and employees; (3) the return by Defendants of all files, data, and things that are the property of SDG and which have been converted and are unlawfully possessed by defendants; and (4) continued preservation of all relevant data and media.

                                               **MANDELBAUM SALSBURG P.C.**

                                               By: _____
                                                       Ronald D. Coleman

                                             Brian M. Block
                                             3 Becker Farm Road
                                             Roseland, NJ 07068
                                             973-736-4600
                                             rcoleman@lawfirm.ms
                                             bblock@lawfirm.ms
                                             *Attorneys for Plaintiff*
                                             *Scherer Design Group, LLC*

Dated:   June 15, 2018