## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RECEIVED

JUL 25 2018

AT 8:30_____M
WILLIAM T. WALSH
CLERK

SCHERER DESIGN GROUP, LLC,

Plaintiff,

v.

CHAD SCHWARTZ; AHEAD
ENGINEERING LLC; FAR FIELD
TELECOM LLC; KYLE MCGINLEY;
DANIEL HERNANDEZ; and RYAN
WALDRON,

Defendants.

Civ. No. 18-3540

**OPINION**

THOMPSON, U.S.D.J.

### INTRODUCTION

This matter comes before the Court on an amended motion to dismiss by Plaintiff Scherer

Design Group, LLC ("Plaintiff" or "SDG"). (ECF No. 23.) Defendants Chad Schwartz, Ahead

Engineering LLC, Far Field Telecom LLC, Kyle McGinley, Daniel Hernandez, and Ryan

Waldron (collectively, "Defendants") oppose. (ECF No. 43.) The Court has decided this Motion

based on the written submissions and without oral argument pursuant to Local Civil Rule

78.1(b). For the reasons stated herein, Plaintiff's Motion is granted.

### BACKGROUND

Plaintiff is a consulting engineering firm in the telecommunications industry, founded by

Colleen Connelly and Glenn Scherer. (Compl. ¶¶ 11–12, ECF No. 1.) Plaintiff alleges that four

of its former employees, Defendants Chad Schwartz, Daniel Hernandez, Kyle McGinley, and

Ryan Waldron, coordinated the appropriation of SDG trade secrets prior to their mass resignation. (*See, e.g., id.* ¶ 65.) Defendant Schwartz, a senior engineer and Director of Engineering at SDG who worked with SDG's predecessor since 2000, resigned on November 22, 2017, effective December 8, 2017. (*Id.* ¶¶ 48, 55; Am. Countercl. ¶ 3, ECF No. 28.) Defendant Schwartz continued to work with Plaintiff as a paid consultant to assist with projects on which he was designated as the Professional Engineer. (Compl. ¶ 62.) Defendant Schwartz then set-up two of his own engineering firms, Defendants Ahead Engineering LLC and Far Field Telecom LLC. (*Id.* ¶ 56.) Defendant Ahead Engineering is a self-described "full-service telecom engineering firm," and Defendant Far Field is a company that offers "innovative cost-effective solutions of oDAS and small cell site concealment." (*Id.* ¶¶ 57, 59 (quoting each company's LinkedIn profile).) "On January 16, 2018, [Defendants] Hernandez, McGinley and Waldron resigned from their positions at SDG and officially became, respectively, Principal of [D]efendant Far Field, Director of Engineering for [D]efendant Ahead Engineering, and Director of Business Processes for [D]efendant Far Field." (*Id.* ¶ 98.)

Plaintiff claims that Defendants Hernandez, McGinley, and Waldron took files and information from Plaintiff's self-described "proprietary relational database." (*See, e.g., id.* ¶ 13.) While in Plaintiff's employ, Defendant Hernandez downloaded Facebook Messenger on his SDG company computer, which Plaintiff claims he failed to log out of upon his resignation. (*Id.* ¶¶ 71, 73.) Defendants assert that Defendant Hernandez logged out and cleared all browsing history from his SDG devices prior to his resignation on January 17, 2018. (Am. Countercl. ¶¶ 11, 13–14, 16.) After Defendant Hernandez's resignation, Plaintiff accessed Facebook messages and conversations from Defendant Hernandez's account (Compl. ¶ 74), which Defendants allege to have been done improperly and without permission (Am. Countercl. ¶¶ 19–

2

21). In particular, there was a Facebook messenger conversation, created December 20, 2017, with Defendants Schwartz, McGinley, Waldron, and Hernandez, as well as Preeyapon Chawpetdee, Taqi Khawaja, Robert Petriocola, and Craig Andrews. (*Id.* ¶¶ 6–7.) The conversation discusses the download of files from Plaintiff's database while Defendants were still employed by Plaintiff, (*see* Compl. ¶¶ 77–84 (exhibits of conversations between Defendants and others)), which Plaintiff asserts is corroborated by the removal and use of USB drives on SDG computers (*id.* ¶ 75). "On February 21, 2018, counsel for SDG corresponded with each of the defendants and demanded that they cease their unlawful conduct, return all materials and proprietary information to SDG, preserve all relevant documentation and confirm their compliance with those demands within three days of that date." (Compl. ¶ 99.)

On March 12, 2018, Plaintiff filed this lawsuit against the four past employees and two new engineering firms, pleading seven Counts: (I) Misappropriation of Trade Secrets, N.J.S.A. 56:15-1, *et seq.*; (II) Violations of the Federal Defend Trade Secrets Act, 18 U.S.C. § 1839, *et seq.*; (III) Breach of Duty of Loyalty; (IV) Tortious Interference with Prospective Business Relationships; (V) Conversion; and (VI) Conspiracy. (*See generally* Compl.) With its Complaint, Plaintiff filed an Order to Show Cause for a temporary restraining order ("TRO") and preliminary injunction. Defendants removed to this Court. (ECF No. 1.) The Court issued a TRO on April 4, 2018 (ECF No. 14), and the preliminary injunction motion is currently pending.

On April 19, 2018, Defendants answered Plaintiff's Complaint and counterclaimed (ECF No. 21), and on May 21, 2018, filed an Amended Answer and Counterclaim, pleading: (I) Invasion of Privacy by Intrusion Upon Seclusion, (II) Invasion of Privacy by Public Disclosure of Private Facts, (III) False Light Invasion of Privacy, and (IV) Tortious Interference with Contractual and Business Relations. (*See generally id.*) On April 25, 2018, Plaintiff filed

the instant Motion to Dismiss (ECF No. 23), and Defendants sought an extension to oppose (ECF No. 26). Defendants then filed an Amended Answer on May 21, 2018 pleading the same four Counts (ECF No. 28), in response to which Plaintiff submitted a "Reply Brief to Opposition Motion" (ECF No. 30), although no opposition had yet been filed. Pursuant to Defendants' requests, the Court set this Motion on an amended briefing schedule, and indicated it would consider Plaintiff's two briefs, in conjunction, in support of its Motion, and that Defendant should oppose by June 28, 2018. (ECF Nos. 34, 36.) Defendants opposed timely, and Plaintiff replied. (ECF Nos. 43, 44.) This Motion is presently before the Court.

## LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). The court, however, may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 203.

Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). If the complaint does not demonstrate more than a "mere possibility of misconduct," it must be dismissed. *See*

4

*Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## **DISCUSSION**

Plaintiff moves to dismiss Counts II (Invasion of Privacy by Public Disclosure of Private Facts) and III (False Light Invasion of Privacy) of Defendants' Counterclaim, arguing that these counterclaims are barred by the New Jersey litigation privilege. (*See generally* Pl.'s Br., ECF No. 23-1.) In response to Defendants' Amended Counterclaim which included the additional fact that Plaintiff allegedly shared information and communications with one of its clients (*compare* Countercl. ¶¶ 38–52, *with* Am. Countercl. ¶¶ 38–54 (adding that Plaintiff shared information with Tilson official)), Plaintiff further argues that communication to one person does not qualify as publicity to adequately state a claim for either Count. (*See generally* Pl.'s Reply, ECF No. 30.) In opposition, Defendants argue that the litigation privilege does not apply because Plaintiff shared Defendants' private Facebook communications with a third party outside of the scope of litigation, and because the counterclaim alleges that the statements were publicly disclosed both in the complaint and to a third party such that the claims are legally sufficient. (*See generally* Defs.' Opp'n, ECF No. 43.) Plaintiff argues that the instant Motion should be granted with prejudice because Defendants amended with this new allegation following Plaintiff's initial motion to dismiss. (Pl.'s Reply Mem. to Opp'n at 1–2, ECF No. 44.)

Under New Jersey law, a claim for invasion of privacy by public disclosure of private facts occurs where: "One [] gives publicity to a matter concerning the private life of another . . . if that matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Catsro v. NYT Television*, 895 A.2d 1173, 1178 (N.J. Super. Ct. App. Div. 2006) (quoting Restatement (Second) of Torts

5

§ 652D (Am. Law Inst. 1977)). False light invasion of privacy occurs where a party "gives publicity to a matter concerning [another party] in a manner that places the [other] before the public in a false light," such that "(a) the false light in which the [other] was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted with reckless disregard as to the falsity of the publicized matter and the false light in which the [other] would be placed.'" *Ingris v. Drexler*, 2015 WL 1472657, at *4 (D.N.J. Mar. 30, 2015) (internal citations omitted); *Peterson v. HVM LLC*, 2016 WL 845144, at *12 (D.N.J. Mar. 3, 2016) (quoting *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1116 (N.J. 2009)).

## I. Application of the Litigation Privilege

"Pleadings, court reports and statements issued in the context of a judicial proceeding are absolutely privileged." *Fleming v. U.S. Parcel Serv., Inc.*, 604 A.2d 657, 684 (N.J. Super. Ct. App. Div. 1992). This applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Apicella v. Hunter*, 2017 WL 1217148, at *3 (D.N.J. Apr. 3, 2017) (quoting *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995)) (noting litigation privilege covers statements made or information contained in Complaint).

The litigation privilege has been applied to a "plethora of tort claims, including . . . invasion of privacy." *Peterson*, 2016 WL 845144, at *7 (quoting *Giles v. Phelan, Hallinan & Schmieg, LLP*, 901 F. Supp. 2d 509, 524 (D.N.J. 2012)). Statements protected by the litigation privilege are "wholly immune from liability," *Smalls v. Buckalew Frizzel & Crevina LLP*, 2014 WL 2889645, at *3 (D.N.J. June 25, 2014) (quoting *Erickson v. Marsh & McLennon Co.*, 569 A.2d 793, 805 (N.J. 1990)), and "[c]ivil liability cannot attach under any legal theory

for statements made during the course of litigation," *Only v. Ascent Media Grp., LLC*, 2006 WL 2865492, at *7 (D.N.J. Oct. 5, 2006) (dismissing claims of invasion of privacy and false light, among others). Accordingly, the fact that Plaintiff "published private, personal, confidential, and, in some instances, privileged communications between Defendants in a public court document, which is accessible to the public at large[,]" is within the scope of the litigation privilege. (Am. Countercl. ¶ 40; *see also id.* ¶ 49.)

Plaintiff appropriately distinguishes cases on which Defendants rely, *W.P. v. Princeton Univ.*, 2016 WL 7493965 (D.N.J. Dec. 30, 2016) and *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 2010 WL 2710566 (D.N.J. July 7, 2010). Unlike the present action, where these facts have been discussed in open court, those cases involved the disclosure of information coupled with motions to proceed anonymously or seal the record. *See W.P.*, 2016 WL 7493965, at *3 ("[It is clear that Plaintiff wanted to maintain his anonymity due to the fact that he filed an Application to Proceed Anonymously . . . ."); (Pl.'s Reply Mem. to Opp'n at 3–4; Defs.' Opp'n at 6). These cases do not disturb the Court's conclusion that publication of allegedly private communications through the Complaint is not an actionable tort.

Defendants advance two further arguments in response. First, Defendants argue that the publication in the Complaint is not immunized because of the allegedly wrongful or criminal nature of Plaintiff's conduct in obtaining the Facebook messages and the damages Defendants suffered separate from the publication. (Defs.' Opp'n at 5 (citing *Scalzo v. Baker*, 185 Cal. App. 4th 91, 102 (Cal. Ct. App. 2010).)[1] The cases on which Defendants rely, however, are distinguishable. In *Kimmel v. Goland*, 793 P.2d 524 (Cal. 1990), the plaintiff's secret tape

---

[1] Citing to California law for support is appropriate in this context. New Jersey courts have looked to California's codified provision and corresponding caselaw in the formulation and application of the litigation privilege. *See, e.g., Hawkins*, 661 A.2d at 289 (citing with approval multiple California decisions establishing the rule of law for the litigation privilege).

recordings were in "alleged[] violation of a *criminal statute* protecting against invasion of privacy," and the damages arose from the recording itself, not the publication. *Scalzo*, 185 Cal. App. 4th at 100 (emphasis added) (discussing *Kimmel* facts and holding). (*See also* Defs.' Opp'n at 5 n.2.) The *Scalzo* court also found that the litigation privilege did not apply where the individual obtained information from American Express to which he was not entitled, and which resulted in identity theft and credit damage. 185 Cal. App. 4th at 101. Here, the Amended Counterclaim does not allege any criminal conduct or statutory violation, nor does it specify the damages Defendants suffered because of the publication. (*See* Pl.'s Reply Mem. to Opp'n at 9.)

Second, Defendants argue that that the litigation privilege does not apply because "Counts Two and Three of the Amended Counterclaim are not limited to statements published in the Complaint . . . . To the contrary, both Counts Two and Three specifically allege additional statements/communications made outside of the judicial proceeding." (Defs.' Opp'n at 4.) It is true that to the extent the information was disseminated beyond judicial processes, the privilege might not apply. *See Bender v. Smith Barney, Harris Upham & Co., Inc.*, 901 F. Supp. 863, 871 (D.N.J. 1994) ("Thus, under New Jersey law, the purposeful dissemination of defamatory allegations contained in a pleading, for purposes of obtaining publicity of the allegation, causes the otherwise privileged allegations to lose their protected status when published."); *Citizens State Bank of N.J. v. Libertelli*, 521 A.2d 867, 870–71 (N.J. Super. Ct. App. Div. 1987) (finding publication of statements "outside of the judicial proceeding" and "not related to the parties' legitimate purposes in litigating or to do the societal goal of enabling litigants to freely express themselves," are not privileged). Plaintiff in response argues that sharing this information with Tilson does not disturb the absolute litigation privilege because Tilson was an affected party that falls within the scope of the privilege. (Pl.'s Reply Mem. to Opp'n at 6 ("Indeed, even

dissemination of information concerning pending or proposed litigation to an affected party in order 'to keep parties connected to the dispute informed of events in the controversy' is also absolutely privileged." (quoting *Kanensigner v. Kanensinger*, 590 A.2d 1223, 1236 (N.J. Super. Ct. App. Div. 1991)).) The *Kanensigner* court discussed various examples of parties "connected to the underlying litigation," such as a liability insurer for a personal injury action or a legatee under a will. 590 A.2d at 1237. And the facts of the case itself involved communications between a beneficiary of the trust at issue and their spouse. *Id.* Accordingly, based on the facts presented, the Court cannot conclude that this Tilson executive was within the veil of the privilege.

Nonetheless, based on the unspecific allegations in the Counterclaim (*see* Am. Countercl. ¶ 28 ("Upon information and belief, Connolly used information from the Messenger conversation to prevent Defendants from obtaining work with Tilson.")), the Court also cannot conclude that there was any publication or dissemination of the specific Messenger conversations that are extensively detailed in the Complaint, such that the privilege granted to the Complaint is disturbed. On balance, Plaintiff is entitled to absolute privilege for the publication of private conversations via Complaint.

## II. Publicity Element of Counts II and III

The Court next considers whether Defendants have stated a claim for either tort outside of the Complaint's publication. Both public disclosure of private facts and false light invasion of privacy require publicity such that the information was communicated "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Castro*, 865 A.2d at 1178. Communication "to a single person or even to a

small group of persons" does not amount to an invasion of privacy. *Id.*; *see also Ingris*, 2015 WL 1472657, at *4 (quoting Restatement (Second) of Torts § 652D cmt. a)).

Beyond the Court's earlier concerns related to the generalized and unclear nature of the communications to Tilson, the fact that Plaintiff communicated "privileged communications between Defendants to a high-ranking employee of Tilson" (*see* Am. Countercl. ¶¶ 41, 50) does not meet the standard for publication. Defendants thus fail to plead a required element of each Count. Because the Court has already concluded that the litigation privilege applies to the publication via Complaint, that dissemination cannot be coupled with dissemination to a Tilson employee to meet the publication standard. Accordingly, Defendants' Counts II and III are dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion is granted. An appropriate Order will follow.

Date: July 19, 2018

_Anne E. Thompson_
ANNE E. THOMPSON, U.S.D.J.